# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-23310-CIV-ALTONAGA/Goodman

**MAK, LLC**,

       Plaintiff,

v.

**MARK VUOZZO**,

       Defendant.

_____/

### ORDER

**THIS CAUSE** came before the Court on Defendant, Mark Vuozzo's Amended Motion to Dismiss [ECF No. 20], filed September 27, 2017. Plaintiff, Mak, LLC, filed a Memorandum of Law in Opposition ("Response") [ECF No. 24], and Vuozzo filed a Response to Plaintiff's Memorandum in Opposition ("Reply") [ECF No. 26]. The Court has carefully considered the parties' written submissions,[1] the record, and applicable law.

## I.      BACKGROUND

Mak, an investor and creditor of two corporations engaged in developing and selling chemical formulas for the treatment of wood, Eco Building Products, Inc. and its subsidiary, Wood Protection Technologies, Inc. ("WPT"), brings suit against Vuozzo, Eco and WPT's Chief Technology Officer, for fraud and other claims. (*See generally* Verified Complaint [ECF No. 1]).

---

[1] These documents include the Affidavit of Mark Vuozzo [ECF No. 20-1], filed with the Motion; certain emails between Vuozzo and Mak's sole member, Gary Rogers (*see* Resp., Exs. A–J [ECF Nos. 24-1 through 24-10]), and the Affidavit of Gary Rogers [ECF No. 24-11], filed with the Response; as well as an email sent by counsel for Vuozzo to counsel for Eco (*see* Reply, Ex. A. [ECF No. 26-1]), and the Verified Complaint in a related action in Colorado state court ("Colorado Complaint") (*see id.*, Ex. B [ECF No. 26-2]), filed with the Reply.

Mak is a Florida limited liability company with its principal place of business in Sunny Isles Beach, Florida. (*See id.* ¶¶ 2–3). Its sole member, Gary Rogers, is a Florida citizen residing in Sunny Isles Beach. (*See* Rogers Aff. ¶¶ 1–2). Vuozzo has resided in San Diego, California since 1992, and since 2010 has worked for Eco in San Diego, where Eco's principal place of business is located. (*See* Vuozzo Aff. ¶¶ 3–4, 5[2], 12).

As early as 2013, Vuozzo exchanged emails with Rogers to solicit loans to fund Eco's business ventures (*see* Resp., Ex. C [ECF No. 24-3] 1), and in September 2013, Vuozzo received a "personal loan" from Rogers (*id.*, Ex. E [ECF No. 24-5] 1). Vuozzo and Rogers regularly communicated by email and, according to Rogers, by telephone, typically at least once per week, from 2013 through 2017, with Vuozzo serving as Rogers's primary point of contact with Eco and WPT. (*See* Rogers Aff. ¶ 8).[3] In May 2014, Vuozzo and Eco's then-Chief Executive Officer, Steve Conboy, flew to Miami, Florida, where they met face to face with Rogers and other potential lenders for the purpose of soliciting funds for Eco. (*See* Resp. 2; Rogers Aff. ¶ 4; Resp., Exs. A & B [ECF Nos. 24-1 & 24-2]; *see also* Vuozzo Aff. ¶ 19 ("I traveled to Florida once at the behest of my employer for 48 hours.")). "As a direct result" of this meeting as well as the ongoing communications between Vuozzo and Rogers, Mak made 38 short-term convertible loans to Eco in 2015 and 2016, and 16 short-term non-convertible loans to WPT in 2016 and 2017. (Rogers Aff. ¶ 9; *see also* Compl. ¶¶ 21–22). Plaintiff accuses Vuozzo of making numerous misrepresentations while soliciting these loans. (*See* Rogers Aff. ¶¶ 10–11, 13–15; Compl. ¶ 8).

---

[2] The Vuozzo Affidavit includes two paragraphs numbered "5." The Court refers to the second paragraph "5" here.

[3] Vuozzo disputes he ever "spoke[] to Plaintiff while representing MAK, LLC in this matter by telephone." (Vuozzo Aff. ¶ 15 (alteration added)).

Plaintiff alleges it regularly made inquiries to Vuozzo regarding Eco and WPT's well-being and business prospects and "[o]n each occasion, Vuozzo assured M[ak] representatives that the [c]ompanies' intellectual property was unique, the chemical formulas and processes were tested, perfected and extraordinarily valuable[,] and the [c]ompanies' business prospects were great." (Compl. ¶ 11 (alterations added); *see also* Rogers Aff. ¶ 14). In fact, unbeknownst to Mak or his superiors at ECO and WPT, Vuozzo had changed key characteristics of Eco's unique chemical formulas and processes without first engaging in proper testing. (*See* Compl. ¶ 14). In particular, without informing Mak or going through proper testing procedures, Vuozzo altered the process for drying Eco's products such that the products did not seep into wood as intended; added a substance to the chemical formulas of the products, thereby changing their pH level; and changed the process for mixing the products by super-mixing the products at a higher speed, which altered their unique characteristics. (*See id.* ¶¶ 15–17). Additionally, without engaging in proper testing procedures, Vuozzo changed the fire inhibitor from Eco's original product to a different product, and falsely told Mak the new inhibitor had been tested. (*See id.* ¶ 18).

Plaintiff alleges Vuozzo admitted he made these changes and avoided testing to save costs that would otherwise come out of his own pocket. (*See id.* ¶¶ 19, 36). Rogers alleges he relied Vuozzo's misrepresentations in deciding to have Mak lend money to Eco and WPT, and Mak would not have loaned the amount it did had Vuozzo been truthful. (*See* Rogers Aff. ¶¶ 12, 16).

Mak loaned a total of $889,000 to Eco and WPT. (*See* Compl. ¶ 23). Each of Mak's loans was for a six-month term and had identical repayment and interest terms, except the loans to Eco were convertible to equity, while the loans to WPT were non-convertible. (*See id.*). Mak had the right to receive repayment of its loans and interest when the loans became due. (*See id.*

¶ 25). Mak alleges it did not plan to exercise its right to convert the Eco loans to equity when it issued the loans. (*See id.*). With interest, Mak expected to recover over $1,000,000 on its loans. (*See id.* ¶ 24).

In the spring or summer of 2016, after Mak had already issued convertible loans to Eco, Vuozzo informed Mak a third-party business was negotiating a deal to purchase Eco and WPT's assets in an effort to "entice" Mak to make additional loans. (*Id.* ¶¶ 26–27). Vuozzo told Mak representatives the deal would close once Eco's products passed the required fire testing, and assured them the products had already passed the testing and would again pass. (*See id.* ¶ 27). Mak alleges at the time it had not planned to convert its loans to equity or make additional loans, but instead was prepared to foreclose on the Eco loans in arrears. (*See id.* ¶ 28). Nonetheless, relying on Vuozzo's representations about the anticipated asset purchase, Mak extended additional loans to Eco while awaiting the closing. (*See id.*).

Eco's products failed two fire tests in November 2016, and after each test Vuozzo assured Mak the failure was an aberration and the products would pass another test. (*See id.* ¶¶ 29–32). In December 2016, while Mak continued to lend money to Eco, it also began lending to WPT, which, according to Mak, it would not have done had Vuozzo disclosed he had changed the drying process, the mixing process, and the formulas of Eco's products without proper testing. (*See id.* ¶¶ 21–22, 34; *see also* Rogers Aff. ¶ 12).

The products failed a third fire test in January 2017. (*See* Compl. ¶ 33). "As a direct result[,] . . . the purchaser refused to proceed with closing the asset purchase transaction, costing Eco in excess of $12 million." (*Id.* ¶ 37 (alterations added)). The failed fire tests also caused material delays in Eco's ability to enter into other third-party ventures and sales, as Eco and WPT spent approximately eight months attempting to determine why the products could not pass

the fire tests and, ultimately, which of Vuozzo's secret alterations had caused the test failures. (*See id.* ¶¶ 35, 38). Over the course of that time, Eco and WPT incurred significant expense reversing each alteration to identify the cause of the failed fire tests. (*See id.* ¶ 35).

Without third party business opportunities and undergoing a costly investigation into the reason for the fire test failures, Eco was financially compromised and unable to repay Mak on its existing loans. (*See id.* ¶ 39). Rather than foreclosing on the loans, Vuozzo suggested Mak convert its Eco loans into equity. (*See* Rogers Aff. ¶ 17). "Vuozzo was the Eco representative primarily responsible for the stock conversions" and sent weekly emails to Rogers on the topic. (*Id.*). Mak decided to begin converting its Eco loans into equity in January 2017. (*See* Compl. ¶ 39). Mak contends by compromising the value of Eco and WPT, Vuozzo's actions devalued the worth of Mak's loans by delaying repayment and lowering the value of Mak's equity in Eco. (*See id.* ¶ 40).

Beyond fraudulently inducing Mak into loaning money to Eco and WPT, Plaintiff alleges Vuozzo engaged in other wrongful conduct. Mak states Vuozzo threatened "[o]n several occasions . . . [to] wrongfully . . . claim ownership of [Eco and WPT's] intellectual property and trade secrets, and to take and otherwise use the intellectual property . . . for his personal gain or to enter into commercial ventures with competing businesses." (*Id.* ¶ 41 (alterations added)). In December 2016, Vuozzo filed a UCC financing statement with Nevada's Secretary of State asserting a lien over WPT, with no supporting documentation. (*See id.* ¶ 42). Mak alleges Vuozzo had no valid claim against WPT and had represented to Eco's CEO no such filings existed just two days after filing the statement. (*See id.*).

Additionally, Mak alleges Vuozzo stole multiple files containing confidential information and trade secrets from Eco and WPT's offices in January 2017. (*See id.* ¶ 43). While Vuozzo

ultimately returned the files, Mak contends there is no way for it, Eco, or WPT, to know whether he returned everything Vuozzo stole or made copies of the stolen information. (*See id.*). Vuozzo refused to provide Eco's CEO with various electronic passwords Vuozzo used as CTO to safeguard Eco's trade secrets. (*See id.* ¶ 46).

Mak asserts Vuozzo threatened to bankrupt Eco and WPT so he could acquire their intellectual property and trade secrets at a "fireside sale" and use them for his personal gain. (*Id.* ¶ 44). Mak further alleges while Eco and WPT were negotiating an agreement with a third-party to apply their products to the third-party's wood and lumber to be distributed to Home Depot, Vuozzo threatened to halt the business arrangement and disparage Eco and WPT to Home Depot if they did not pay him a significant amount of money. (*See id.* ¶ 45).

Eco placed Vuozzo on administrative leave while it investigated his conduct and worked to recover its intellectual property. (*See id.* ¶ 47). Eco and Vuozzo executed a non-disclosure and non-disparagement agreement on July 12, 2017, which Plaintiff alleges Vuozzo subsequently violated in August 2017 with statements he made while seeking employment with one of Eco's competitors. (*See id.* ¶ 48).

Vuozzo is already involved in litigation against Eco. On April 19, 2017, Vuozzo filed a Demand for Arbitration against Eco before the American Arbitration Association in California alleging he was entitled to approximately $700,000 in past unpaid salary. (*See* Vuozzo Aff. ¶ 8; Reply, Ex. A). In the Complaint in the present action, Mak contends this litigation is "meritless" and accuses Vuozzo of encouraging a former Eco employee to litigate a similarly meritless wage claim against Eco. (Compl. ¶¶ 49–50).

On June 26, 2017, Eco brought the Colorado Complaint against Vuozzo in Colorado state court requesting the court enjoin the AAA proceeding; declare Eco the owner of all intellectual

property created by Vuozzo on behalf of Eco; require Vuozzo to account for and return any intellectual property taken from Eco; and award Eco damages for any corporate funds Vuozzo wrongfully converted. (*See* Colorado Compl. ¶ 1).

In the present action, Mak brings a six-count Complaint against Vuozzo asserting federal jurisdiction pursuant to 28 U.S.C. section 1332(a)(1).[4] (*See* Compl. ¶ 2). Mak brings claims for (1) breach of fiduciary duties; (2) fraud; (3) negligent misrepresentations; (4) tortious interference with Mak's contractual lending relationships with Eco and WPT; and (5) negligence. (*See generally id.*). In Count (6), Mak requests a preliminary and permanent injunction requiring Vuozzo to remove the Nevada UCC financing statement; enjoining Vuozzo from disparaging Eco and WPT; enjoining Vuozzo from using or disclosing Eco and WPT's intellectual property and other confidential information; and ordering Vuozzo to return any property belonging to Eco and WPT that remains in his possession, including any copies. (*See id.* ¶ 86). Aside from this injunctive relief, Mak seeks damages, pre-judgment and post-judgment interest, and attorney's fees and costs. (*See id.* 16).

Vuozzo moves to dismiss under Federal Rule of Civil Procedure 12(b)(2), contending the Court lacks personal jurisdiction over him. (*See generally* Mot.). In the alternative, Vuozzo requests a transfer of venue to Colorado or California pursuant to 28 U.S.C. section 1404(a). (*See generally* Reply).

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. In the case of a non-

---

[4] Mak alleges damages in excess of $75,000 and there is complete diversity of parties, as Mak, an limited liability company whose sole member is a citizen of Florida, is diverse from Vuozzo, who resides in California. (*See* Compl. ¶ 2).

resident defendant, a federal court may properly exercise personal jurisdiction only if the requirements of (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Id.* (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).

If the defendant satisfies its burden, the burden then shifts back to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.* (citation omitted). "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir.2010); other citation omitted).

### B.    Transfer of Venue Under 28 U.S.C. Section 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Courts have broad discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Co.*, No. 15-24067-CIV, 2016 WL 1546427, at *1 (S.D. Fla. Apr. 15, 2016) (internal quotation marks omitted) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (other citation omitted).

Courts should consider at least the following private and public interest factors in weighting whether transfer to an alternative forum is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *2 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)) (other citation omitted).

### III.    ANALYSIS

### A.    Personal Jurisdiction

### 1. Florida's Long-Arm Statute

Florida's long-arm statute recognizes two kinds of personal jurisdiction over defendants: specific jurisdiction and general jurisdiction. *See* FLA. STAT. § 48.193. Plaintiff appears to be proceeding under a theory of specific jurisdiction, which exists where the litigation arises out of or relates to the defendant's contact with the forum. (*See* Resp. 6 ("Even if those contacts were

not sufficiently 'continuous and systematic' to have created general jurisdiction, there clearly is specific jurisdiction over this dispute.")). The specific jurisdiction portion of the long-arm statute, Section 48.193(1)(a), lists certain acts which may subject nonresident defendants to the jurisdiction of Florida courts. The statute provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: . . . .

FLA. STAT. § 48.193(1)(a) (alterations added). From the list which follows, the only such enumerated act Mak has asserted that would bring Vuozzo within the ambit of a Florida court is: "[c]ommitting a tortious act within this state." *Id.* § 48.193(1)(a)(2) (alteration added)); (*see also* Resp. 5).

"[U]nder Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (first alteration added; emphases omitted) (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)). A tortfeasor need not be physically present in the state for personal jurisdiction to exist under the long-arm statute. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1222–23 (S.D. Fla. 2009) (citing *Horizon Aggressive Growth, L.P. v. Rothstein-Kass*, 421 F.3d 1162, 1168 (11th Cir. 2005). "Allegations about an out-of-state defendant's telephonic, electronic, or written communications into Florida are sufficient to trigger jurisdiction under the Long-Arm statute provided, however, that the cause of action arises from those communications." *Id.* at 1223 (alterations, internal quotation marks, and citations omitted). Relevant here, "fraudulent misrepresentations made from outside Florida and directed into Florida (by phone, fax, writing) constitute tortious acts committed within Florida under Florida's

long-arm statute." *Id.* (citing *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735 (Fla. 3d DCA 2006)).

Mak's cause of action for fraud is premised on its allegation Vuozzo fraudulently misrepresented Eco's products had been tested and would pass future tests when he solicited Mak to make loans to Eco and WPT. (*See* Compl. ¶¶ 9, 11, 57; Rogers Aff. ¶ 10). Mak does not specify whether these misrepresentations were made during Vuozzo's May 2014 face-to-face meeting with Rogers in Florida (*see* Rogers Aff. ¶ 4), or during Vozzo's regular communications with Rogers via email and telephone (*see id.* ¶ 8).[5] Regardless, the misrepresentations were directed into Florida, where Rogers works and resides and where Mak's injury was felt (*see id.* ¶¶ 2–3, 8). Accordingly, Vuozzo's fraudulent misrepresentations constituted tortious acts "within this state" in satisfaction of section 48.193(1)(a)(2), Florida Statutes. *See, e.g.*, *Sierra*, 650 F. Supp. 2d at 1223.

### 2. Due Process

Even where the requirements of Florida's long-arm statute are met, the exercise of personal jurisdiction is only proper if it also satisfies the Fourteenth Amendment's Due Process Clause. *See Licciardello*, 544 F.3d at 1284. "The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there." *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). "Fair warning" exists where a defendant has purposefully directed his activities at the forum and the litigation arises out of injuries relating to

---

[5] Vuozzo denies having "spoken to Plaintiff while representing MAK, LLC in this matter by telephone." (Vuozzo Aff. ¶ 15). When dealing with conflicting evidence, the Court is to construe "all reasonable inferences in the light most favorable to the plaintiff," *Peruyero*, 83 F. Supp. 3d at 1287 (citation omitted), and the Court thus presumes for the purposes of this Motion Vuozzo made telephone calls to Rogers in Florida. In any event, Vuozzo does not deny he engaged in email communication with Rogers, and Mak supports this allegation by attaching ten exhibits to his Response containing emails sent by Vuozzo with Rogers as a recipient (*see* Resp., Exs. A–J).

those activities. *See id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

A defendant's conduct and ties to the forum must also "be of a character that he should reasonably anticipate being haled into court there." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (citations omitted). "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996) (alteration added) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person." *Id.* (alteration added; citations omitted). "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Madara*, 916 F.2d at 1516 (citations omitted; emphasis in original).

This analysis requires the Court to determine whether the contacts are such that the exercise of personal jurisdiction would "comport with 'fair play and substantial justice.'" *Id.* at 1517 (citation omitted). To that end, courts consider the following factors: "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies." *Id.* (citations omitted).

"[T]he Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to cause injury in the forum state, because the defendant must have reasonably anticipated being

haled into court in the forum state regarding those actions." *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1338 (S.D. Fla. 2010) (citing *Brennan v. Roman Catholic Diocese of Syracuse, N.Y., Inc.*, 322 F. App'x 852, 857 (11th Cir. 2009)); *see also Licciardello*, 544 F.3d at 1286 ("These allegations satisfy the *Calder* effects test for personal jurisdiction — the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum. The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [defendant] because his intentional conduct in his state of residence was calculated to cause injury to [plaintiff] in Florida." (alterations added) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984))).

Vuozzo's contacts with Florida were neither random nor fortuitous. Rather, Mak alleges Vuozzo made material misrepresentations to Rogers during a campaign to solicit loans for Eco and WPT spanning four years, involving approximately weekly emails or phone calls to Rogers in Sunny Isles Beach and an in-person visit to South Florida. (*See* Rogers Aff. ¶¶ 4, 8–10). Mak asserts Vuozzo intended for Mak to rely, and it did in fact rely, on Vuozzo's statements made during these contacts and it suffered damages as a result. (*See* Compl. ¶¶ 59–60). These allegations are sufficient to satisfy due process. *See Licciardello*, 544 F.3d at 1288; *see also Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se. LLC*, No. 3:13-CV-306-J-34JRK, 2014 WL 1268584, at *19 (M.D. Fla. Mar. 27, 2014) ("Time Warner directed its alleged tortious conduct to Cableview, knowing that Cableview was located in Florida, and knowing that Cableview would suffer damages from its actions in Florida. On these allegations, Cableview has pled that Florida is the focal point of both Time Warner's conduct and the harm suffered such that Time Warner cannot claim surprise at being haled into court in Florida.").

The Court also concludes the additional "fair play" factors weigh in favor of exercising personal jurisdiction over Vuozzo. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288 (citations omitted). Similarly, the interest of Plaintiff, a Florida LLC whose sole member resides in Florida, is best served litigating this action in its home state.

As to the interstate judicial system's interest in obtaining an efficient resolution of the action, two potential witnesses in this case, Rogers and Daniel Kordash, an attendee of the 2014 South Florida meeting with Vuozzo, reside in Florida. (*See* Rogers Aff. ¶¶ 4–6). According to Rogers, Eco's current CEO, another potential witness in this action, has "committed to make any necessary appearances in this District." (*Id.* ¶ 7). Mak's records, which Rogers states Mak plans on using as evidence in the litigation, are located in Florida. (*See id.* ¶ 3). While Vuozzo claims "[e]veryone who can attest to my employment with Eco Building Products is located in California" (Vuozzo Aff. ¶ 18), whether Vuozzo was employed by Eco is not at issue in this litigation and, in any case, Mak states both Rogers and Kordash can attest to Mak's employment with Eco (*see* Resp. 12), and presumably Eco's current CEO can testify on this topic as well. This factor also weighs in favor of jurisdiction.

Finally, while travel to Florida to defend against this action would impose a burden on Vuozzo, "[m]odern means of communication and transportation have lessened the burden of defending a lawsuit in a distant forum." *Republic of Pan. v. BCCI Holdings (Lux.), S.A.*, 119 F.3d 935, 947–48 (11th Cir. 1997) (alteration in original; internal quotation marks and citations omitted).

Taken together, the above factors do not counsel against the exercise of jurisdiction, and doing so would not offend traditional notions of fair play and substantial justice. Accordingly, the Court will not dismiss the case on the basis it lacks personal jurisdiction over Vuozzo.

**B.     Venue**

In his Motion, Vuozzo argues Mak "fails to sufficiently state a claim" with regard to venue. (Mot. ¶ 3). Venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see also Marley v. Jetshares Only, LLC*, 767 F. Supp. 2d 1337, 1339 (S.D. Fla. 2011) ("[Section] 1391[(b)](2) does not limit venue to the place where all or most of the events giving rise to the claim occurred; the statute places venue in every district where a 'substantial part' of the events occurred." (alterations added; internal quotation marks omitted) (quoting *Waters Edge Living, LLC v. RSUI Indem. Co.*, No. 4:06-cv-334-RH/WCS, 2007 WL 1021359, at *4 (N.D. Fla. Mar. 31, 2007))). "[S]ubstantial events occurred within a venue when harm or injury was suffered in that venue." *Mobile Diagnostic Imaging, Inc. v. Gormezano*, No. 12-60888-CIV, 2012 WL 3244664, at *2 (S.D. Fla. Aug. 9, 2012) (alteration added; citation omitted).

Mak suffered economic injury in Sunny Isles Beach, an area within this District where Mak's principal place of business is located. (*See* Compl. ¶ 3). Vuozzo's alleged misrepresentations regarding the testing ability of Eco's products either occurred in this District during a May 2014 meeting, or at the very least were directed to and caused injury in this District via telephone calls or emails to Rogers in Sunny Isles Beach. (*See* Rogers Aff. ¶¶ 4, 8–10). As the misrepresentations constituting a "substantial part" of the events giving rise to Mak's breach of fiduciary duties, fraud, negligent misrepresentation, and negligence claims occurred in this District, venue is indeed proper here.

In his Reply, Vuozzo nonetheless requests the Court transfer this case to another venue pursuant to 28 U.S.C. section 1404(a). (*See generally* Reply). "To prevail on a motion brought under [section] 1404(a), a movant must establish: (1) an adequate alternative forum is available; (2) the private interests of the parties weigh in favor of transfer; and (3) the public interest weighs in favor of transfer." *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1382 (S.D. Fla. 2014) (citing *Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012)).

"An alternative forum exists where jurisdiction is proper, venue is proper[,] and the parties are amenable to service of process in the transferee forum." *Trafalgar*, 878 F. Supp. 2d at 1285 (alteration added; internal quotation marks and citation omitted). Vuozzo proposes two alternative forums: the "Colorado Court" hearing Eco's litigation against Vuozzo, and "after suit is initiated by V[uozzo] in California, that Court." (Reply 4 (alteration added)).

"[Section] 1404(a) only provides for transfer between districts or divisions of *federal* district court." *Doran v. City of Clearwater*, 814 F. Supp. 1077, 1078 (M.D. Fla. 1993) (alteration and emphasis added). The Colorado state court where the Colorado Complaint was filed is not a viable forum to transfer this case. Moreover, the only connection Colorado has to this action is it is the state in which Eco, a non-party, is incorporated. (*See* Vuozzo Aff. ¶ 12). Vuozzo has not shown venue could be laid in Colorado, as Vuozzo does not reside there and no "substantial part of the events or omissions" giving rise to Mak's claims occurred there. 28 U.S.C. §§ 1391(b)(1)–(2). Nor has Vuozzo stated he would be amenable to service of process in Colorado or shown a Colorado court could exercise personal jurisdiction over him in this action. Vuozzo has thus failed to identify a viable alternative forum in Colorado.

Similarly, Vuozzo has not shown the "California" court is a feasible forum. While Vuozzo references an impending suit he plans to file in California (*see* Reply 4 & ¶¶ 10–11), he does not specify whether his case would be filed in state or federal court, and if the latter, in which federal district court within California it would be filed. To the extent Vuozzo intended to refer to the arbitration proceeding before the AAA he initiated in April 2017 (*see* Vuozzo Aff. ¶ 8; Reply, Ex. A), the Court cannot transfer this case to a California arbitration tribunal, as it is not a federal district court. *See Doran*, 814 F. Supp. at 1078. Vuozzo's failure to identify an adequate alternative forum alone necessitates denial of his request to transfer under section 1404.

Even had Vuozzo properly identified as a viable forum the United States District Court for the Southern District of California, which encompasses San Diego where Vuozzo resides and was employed by Eco (*see* Vuozzo Aff. ¶¶ 3, 5, 13), the public and private interest factors also weigh against transfer. As mentioned, Mak has specifically identified a potential non-party witness residing in Florida and another potential witness who consented to testifying in this District. (*See* Rogers Aff. ¶¶ 6–7). In contrast, Vuozzo has not identified any specific non-party witnesses for whom it would be more convenient to litigate in the Southern District of California, and has instead only vaguely stated "[e]veryone who can attest to my employment with Eco . . . is located in California" (Vuozzo Aff. ¶ 18 (alterations added)), and "[t]he majority of the witnesses and proof for the subject case are already being litigated in Colorado (and soon California) . . ." (Reply ¶ 10 (alterations added)).

Similarly, while Mak intends to use its own business records in this litigation, which are located in this District (*see* Rogers Aff. ¶ 3), Vuozzo has pointed to no specific documents or sources of proof which are easier accessed in California. The interests of justice favor keeping the case in Florida because, as noted *supra*, "Florida has a very strong interest in affording its

residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288 (citations omitted). The above analyzed factors, along with "the weight accorded a plaintiff's choice of forum," *Rothschild*, 2016 WL 1546427, at *2, all cut against a transfer.

The remainder of the factors are either neutral or unable to be assessed by the Court given the submissions by the parties. While Vuozzo states the burden on him would be "great" if he would have to "handle his California lawsuit, but also defend in Colorado and Florida" (Reply ¶ 11), it would be equally inconvenient for Mak, who is not a party to the Colorado lawsuit or California arbitration and whose sole member is located in Sunny Isles Beach, to litigate its claim in California.

It appears Southern California and South Florida are dual loci of operative facts. In Southern California, Vuozzo allegedly made alterations to the Eco products, stole Eco property, and made misrepresentations to Rogers via telephone and email; however, South Florida is where Vuozzo directed his alleged misrepresentations, where Rogers was injured by the alleged misrepresentations, and where a face to face meeting between Vuozzo and Rogers was held. The parties have not provided the Court with any briefing or affidavits regarding the availability of process in each forum to compel the attendance of unwilling witnesses, the relative means of the parties, or which state's substantive law governs Mak's claims. These factors accordingly do not persuade the Court a transfer is needed.

In sum, Vuozzo has not shown the private and public interest factors warrant disturbing Mak's choice of forum. Therefore, the Court declines to transfer the case.

## IV.     CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 20]** is **DENIED**. Defendant shall file his answer to the Complaint and response to the Motion for Preliminary Injunction [ECF No. 10] no later than **October 20, 2017**. The Clerk is to reinstate the Motion for Preliminary Injunction [ECF No. 10] as a pending motion.

**DONE AND ORDERED** in Miami, Florida, this 6th day of October, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record